Jeffrey L. Wise, Esq.: SBN 198725
**WISE LAW OFFICE**
1711 California Avenue
Bakersfield, California 93304
Telephone: (661) 327-0622
Facsimile: (661) 328-9977

Attorney for Plaintiff, Russell Grigg

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL GRIGG,<br><br>Plaintiff,<br><br>vs.<br><br>GRIFFITH COMPANY, A California Corporation, and DOES 1 through 15, inclusive,<br><br>Defendants. | Case No.: 1:13-CV-01379-AWI-JLT<br><br>[Kern County Superior Court Case #S-1500-CV-279813 DRL]<br><br>**OPPOSITION TO GRIFFITH COMPANY'S MOTION TO DISMISS** |

COMES NOW Complainant RUSSELL GRIGG ("Grigg") for himself and no one else, and opposes Griffith Company's Motion to Dismiss.

## INTRODUCTION/STATEMENT OF FACTS

During the time he was employed with Defendant GRIFFITH COMPANY ("Griffith"), Griffith maintained a Management Bonus Plan ("MBP") for which Grigg was eligible and received compensation based upon company performance. The terms of the MBP were set out as a written program for which Grigg was eligible and entitled based upon his position in management for Griffith, and which were part of the terms of his employment with Griffith. Inclusive in the terms of the MBP were that annual

bonuses would be computed and added to an eligible employee's Bonus Account, and would be dispersed 50% during the year following the year in which earned, and the remaining 50% dispersed in 10% increments over the next 5 years, so long as the employee remained employed. However, the MBP also had express exceptions to the rule for certain situations, most importantly was if an employee's departure was due to a disability, at which time the employee would fully vest in the MBP and be paid the remaining balance in his Bonus Account at the next payout date.

In December, 2011, Grigg experienced medical complications which were fully disabling. While he was in the midst of a disability leave from Griffith, although he indicated to Griffith that he would not likely be able to return to work because of his condition, Griffith took the information as Grigg's resignation. Grigg pursued the determination of his disability status for, among other things, the MBP with Griffith, but Griffith management has chose to deny him disabled status, and refused and continues to refuse to follow the delineated procedure for review of the determination. Based on the election by Griffith management, and pursuant to the terms of the MBP, the funds from Grigg's Bonus Account will then be dispersed among the remaining Griffith management members.

## POINTS AND AUTHORITIES

### GRIFFITH'S MOTION IS UNTIMELY AND WAIVES OBJECTIONS

Pursuant to FRCP §81(c)(2), an Answer or other pleading (i.e., a Rule 12(b)(6) motion, is to be filed "within 21 days after receiving—through service or otherwise—a copy of the initial pleading… " or "7 days after the notice of removal is filed," whichever period is longest.

Griffith was served with the state court Summons and Complaint on July 29, 2013. As noted in Griffith's Moving Papers, "On August 28, 2013, Defendants removed the state court action to his Court on the basis of federal question jurisdiction." (Motion, p2:10-12). This Motion was filed on November 5, 2013, or 99 days after service of the

Complaint, and 68 days after removal. Although Griffith relies on the Court's order of October 22, 2013 relating to co-defendant Thomas Foss' Rule 12 motion, that Motion was filed by, and the Order relating to, Foss. As such, this Motion is untimely, and must be denied.

## THE MBP IS NOT AN ERISA PLAN, AND GRIFFITH'S ARGUMENTS THEREFORE FAIL

Griffith's entire FRCP 12(b)(6) motion is predicated upon an initial assertion, and requirement, that the MBP be an "ERISA" plan. However, the MBP is a simple, contractual Bonus Plan, and not governed by ERISA. As such, the arguments by Griffith against the Breach of Contract cause of action, and the Wage and Hour claims, simply fail.

As Griffith notes, "a 'plan' is defined in relevant part as either '*an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.*", citing 29 U.S.C. §1002(3). (Memorandum of Motion, p. 3:18-21). However, Griffith failes to delineate how the MBP is **_EITHER_** an "employee welfare benefit plan" **_OR_** and "employee pension benefit plan". As further noted by Griffith, an "employee welfare benefit plan" is defined as "… established or maintained for the purpose of providing … through the purchase of insurance or otherwise, … benefits in the event of sickness, accident, disability, death or unemployment", citing 29 U.S.C. §1002(1). (Id, at p. 3:22-27) Then, Griffith notes an "employee pension benefit plan" is defined as something that, "to the extent that by its express terms or as a result of surrounding circumstances … results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." (id, at p. 4:1-5)

However, a closer exam of the actual language of 29 U.S.C.A. §1002 is telling about the scope and intended purpose:

"For purposes of this subchapter:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained

by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

(2)(A) Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program - (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution. "

Within the definition of covered ERISA "Plans", ERISA is clearly defined to be applicable to "plans" that provide for health and welfare benefits of employees, or retirement programs offering benefits post retirement. Even the name – Employee Retirement Income Security Act – indicates the act is governing of **_RETIREMENT_** plans. Griffith's assertions that the MBP are covered by ERISA are simply unfounded, and untenable, claims which they neither explain how they fit the criteria, nor do they provide any basis for the claims. In reality, they simply fail, and ignore simple California law covering such Bonus Plans. Bonus plans in California have been routinely defined to be wages compensable to employees pursuant to California Labor Code §200 (*Lucian v. All State Trucking*, 116 Cal.App.3d 972; *Neisendorf v. Levi Strauss & Co., et al.*, 143 Cal.App.4th 509, 49 Cal.Rptr.3d 216). Griffith's assertion that any bonus plan is simply an ERISA plan and therefore enforcement under Labor Code §200 and is pre-empted

simply fails. If such logic were held valid, then **ANY** wage plan or contract would be definable as an ERISA plan.

  The typical bonus plan, as the one contemplated by Griffith, and integrated into the terms of the employment relationship and agreement between them and Grigg, is simply that—a bonus plan governed by California law as wages which is structured to *provide pay based upon performance, sales, or some other grounds.* Pursuant to the terms set out by ERISA at U.S.C. §1002 in defining both employee welfare benefit plans and employee pension benefit plans, the MBP is simply not an ERISA program, which engages the preemptions cited by Griffith.

  Because the MBP is simply not an ERISA plan, it is a contractual issue, and therefore the Motion to Dismiss that cause of action must be denied. Similarly, California Wage and Hour law, i.e. Labor Code §200 claims based upon bonuses is not preempted, and the Motion to Dismiss that cause of action must also be denied. Based on the foregoing Points and Authorities, the Court's records and files, and any other oral or written evidence which may be presented, Plaintiff respectfully requests that Defendant Griffith's Motion to Dismiss be DENIED.

Dated: December 2, 2013            WISE LAW OFFICE

                      By: *[signature]*
                         JEFFREY L. WISE, Esq.

# PROOF OF SERVICE

U.S DISTRICT COURT                      )
EASTERN DISTRICT OF CALIFORNIA          )
CASE # 1:13-CV-01379                    )     ss.

    I am employed, and am a resident in the County of Kern, State of California. I am over the age of 18 and not a party to the within action. My business address is 1315 "L" Street, Bakersfield, CA 91101.

On December 3, I served the foregoing documents, described as **OPPOSITION TO GRIFFITH COMPANY'S MOTION TO DISMISS**

  ( )  **BY MAIL** as follows:
      ( )  **STATE** - I am readily familiar with the Wise Law Office practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Bakersfield, California, in the ordinary course of business. I am aware that on motion of party service, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

      ( )  **FEDERAL** - I deposited such envelope in the U.S. Mail at Bakersfield, California with postage thereon fully prepaid.

  ( X )  **BY ELECTRONIC FILING**, I caused all of the pages of the above entitled document(s) to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above entitled case. The Case Filing Receipt will be maintained with the original document(s) in our office.

| | |
|---|---|
| Roger M. Mansukhani | Attorney for Defendants, |
| Gordon & Rees LLP | Griffith Company, Thomas Foss |
| 101 W. Broadway, Suite 2000 | (T): (619) 696-6700 |
| San Diego, CA 92101 | (F): (619) 696-7124 |
| | Email: rmansukhani@gordonrees.com |

  ( )  **STATE** - I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  (X)  **FEDERAL** - I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 3, 2013, at Bakersfield, California.

                                                        JEFFREY WISE