UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL GRIGG,<br><br>Plaintiff<br><br>v.<br><br>GRIFFITH COMPANY, a California corporation, THOMAS FOSS, and DOES 1 through 50, inclusive,<br><br>Defendants | CASE NO. 1:13-CV-1379 AWI JLT<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 11) |

This is an employment related case brought by Plaintiff Russell Grigg ("Grigg") against his former employer Defendant Griffith Company ("Griffith") and his former supervisor Defendant Thomas Foss ("Foss"). This case was removed from the Kern County Superior Court on the basis of federal question jurisdiction. Griffith now moves to dismiss the first, second, and fifth causes of action. Because Griffith has filed an answer, its motion will be treated as a Rule 12(c) motion. For the reasons that follow, the motion will be granted in part and denied in part.

**FACTUAL BACKGROUND**

Grigg worked for Griffith for 33 years in various positions, but ultimately was promoted to Vice President/District Manager. Grigg was a participant in Griffith's Management Bonus Plan ("MBP") and Employee Stock Ownership Plan ("ESOP"). The structure of the MBP was that during any fiscal year, the amount of an employee's bonus would be computed and held for payout effective December 31 of that year, with 50% of the bonus amount being paid shortly after

1 the year earned, and with 10% of the total bonus amount paid out each of the subsequent 5 years.
2 Also, if there was a separation of employment based upon disability, the employee's Bonus
3 Account would immediately fully vest and become payable without forfeiture.  The ESOP is a
4 company structured retirement plan.  As a part of the terms of the ESOP, if an employee separates
5 from Griffith due to disability, the employee's account is valued based upon the year end value of
6 the stock for the year of departure.  The employee then begins to receive payments one year after
7 the employee's separation from employment.

8    Over the years, Grigg performed his job well and without difficulty until Foss was
9 promoted as President and CEO of Griffith in January 2011.  Once Foss was promoted, Grigg
10 began experiencing difficulties in performing his job, and also began having health problems.
11 Eventually, in October 2011, Grigg notified Griffith that he required a 12 week leave of absence
12 for medical reasons.  On December 5, 2011, Grigg sent an e-mail that indicated that he did not feel
13 that he could continue working at Griffith due to his medical conditions and other reasons.  The e-
14 mail also raised the issues of his interest in the MBP and ESOP.  The e-mail was construed by
15 Defendants as an immediately effective resignation.

16    Shortly after December 5, Grigg requested that Griffith make a finding that he was
17 permanently disabled for purposes of the MBP and ESOP.  After various correspondences and
18 medical examinations, Defendants denied Grigg's request in September 2012 and refused to find
19 him disabled under the MBP and the ESOP, even though Grigg met the criteria for disability under
20 both plans.  Grigg later wrote to Griffith and requested that Griffith follow the Review Procedure
21 outlined by the ESOP and MBP.  Griffith failed to respond to Grigg's request and has failed to
22 follow the required Review Procedure.  Grigg's vested MBP account balance is approximately
23 $173,000.  Griffith has refused to relinquish Grigg's MBP funds and refused to make payments
24 under the ESOP.

## **LEGAL FRAMEWORK**

27    When a defendant has filed an answer, and then files a Rule 12(b)(6) motion to dismiss,
28 courts will treat the motion as a Rule 12(c) motion for judgment on the pleadings.  Hoeft v.

1  Tucson Unified Sch. Dist., 967 F.2d 1298, 1301 (9th Cir. 1992); Aldabe v. Aldabe, 616 F.2d 1089,
2  1093 (9th Cir. 1980).  However, because the motions are functionally identical, the same standard
3  of review applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion.  Cafasso v. General
4  Dynamics C4 Sys., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011); Dworkin v. Hustler Magazine, Inc.,
5  867 F.2d 1188, 1192 (9th Cir. 1989); see also Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 44
6  (1st Cir. 2012).  Judgment on the pleadings is appropriate when, taking all the allegations in the
7  non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.
8  Ventress v. Japan Airlines, 486 F.3d 1111, 1114 (9th Cir. 2007); Honey v. Distelrath, 195 F.3d
9  531, 532 (9th Cir. 1999).  The allegations of the nonmoving party must be accepted as true, while
10 any allegations made by the moving party that have been denied or contradicted are assumed to be
11 false.  See MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir. 2006); Hal Roach
12 Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  The facts are viewed
13 in the light most favorable to the non-moving party and all reasonable inferences are drawn in
14 favor of that party.  See Living Designs, Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 360
15 (9th Cir. 2005); Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004).  To survive a motion for
16 judgment on the pleadings based on failure to state a claim, the complaint "must contain sufficient
17 factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v.
18 Iqbal, 556 U.S. 662, 678 (2009); see also Cafasso, 637 F.3d at 1055 & n.4.  "A claim has facial
19 plausibility when the plaintiff pleads factual content that allows the court draw the reasonable
20 inference that the defendant is liable for the misconduct alleged." Id.  Generally, in ruling on a
21 Rule 12(c) motion, the court may not go beyond the pleadings to resolve an issue.  See Hal Roach
22 Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989).  However, courts may
23 consider documents attached to the complaint, documents incorporated by reference in the
24 complaint, and matters that may be judicially noticed.  See Dichter-Mad Family Partners, LLP v.
25 United States, 709 F.3d 749, 761 (9th Cir. 2013); Grajales, 682 F.3d at 44.  While Rule 12(c)
26 "does not expressly authorize 'partial' judgments, neither does it bar them, and it is common
27 practice to apply Rule 12(c) to individual causes of action."  Larsen v. Trader Joe's Co., 917
28 F.Supp.2d 1019, 1022 (N.D. Cal. 2013); Brown v. American Airlines, Inc., 285 F.R.D. 546, 551

(C.D. Cal. 2011). Finally, although Rule 12(c) does not mention leave to amend, courts have the discretion in appropriate cases to grant a Rule 12(c) motion with leave to amend, or to simply grant dismissal of the action instead of entry of judgment. See Lonberg v. City of Riverside, 300 F.Supp.2d 942, 945 (C.D. Cal. 2004); Carmen v. San Francisco Unified Sch. Dist., 982 F.Supp. 1396, 1401 (N.D. Cal. 1997). The court need not grant leave to amend when doing so would be futile and the deficiencies in the complaint could not be cured by amendment. See Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1046 (9th Cir. 2006); Gomez v. Winslow, 177 F.Supp.2d 977, 981 (C.D. Cal. 2001).

## DEFENDANT'S MOTION

*Griffith's Argument*

Griffith argues that the first, second, and fifth causes of action, which are state law causes of action, are completely preempted by ERISA. The Complaint alleges that the MBP and the ESOP provide for benefits in the event of a plan participant's disability. Thus, the MBP and ESOP are covered as "plans" under ERISA. ERISA provides the exclusive remedy to recover benefits due under a "plan" or to enforce rights under a "plan." Because the first, second, and fifth causes of action are all based on alleged violations of the MBP and the ESOP, and those are ERISA "plans," ERISA completely preempts these claims.

In reply, Griffith argues that the MBP is an ERISA "top-hat plan." The MBP is divided between an annual bonus plan and a nonqualified, deferred compensation plan. Half of each participant's bonus amount is paid out as an annual bonus and the other half is retained by Griffith as deferred compensation. The deferred compensation is non-elective and performance-based, and vests pursuant to a schedule. The unvested amount is held by Griffith and, with some exceptions, is forfeited when there is a separation of employment. By its own terms, the MBP expressly states that the nonqualified deferred compensation arrangement is intended to be a "top-hat plan." All of Grigg's claims involving the MBP relate to the top-hat portion of the MBP. Specifically, Grigg complains that Griffith improperly failed to deem the unvested amounts as fully vested when he became totally disabled. Because the MBP is a "top-hat plan," ERISA preemption applies.

*Plaintiff's Opposition*

Grigg argues that the MBP is not an ERISA plan. The MBP is a simple contractual bonus plan that is not governed by ERISA. The definitions of "employee welfare benefit plan" and "employee pension benefit plan" make it clear that the plans that are meant to apply post-retirement are governed by ERISA. Griffith does not explain which type of ERISA plan the MBP is, or otherwise explain how ERISA applies to the MBP. As a bonus plan, California law covers the MBP, and the first, second, and fifth causes of action are not preempted.

In sur-reply, Grigg argues that whether a plan is an ERISA plan is a question of fact. As such, Grigg would need to conduct discovery to determine the application of the rules that define a "top-hat plan" before a clear determination of the MBP's status can be determined. Nevertheless, Grigg argues that, despite the language in the MBP, the MBP is a bonus plan and not an ERISA plan. Griffith continues to fail to explain how the MBP relates to retirement or welfare as required by ERISA's owns terms. Courts recognize plans that are created to incentivize performance and not to provide retirement income, like the MBP, are not ERISA plans. The deferral aspect of the deferred compensation is not related to retirement, nor is it deferred compensation as required by ERISA. It is a bonus plan that has a payout structure that is not related to, nor is it governed by, a participant's retirement status. The funds are paid out over a prescribed period of time relative to their identification within the plan, they are not paid out in conjunction with retirement or for a welfare plan. Because the MBP is not a "top-hat plan," ERISA preemption does not apply.

*Legal Standard*

ERISA is a "comprehensive statute that subjects a wide variety of employee benefit plans to complex and far-reaching rules designed to protect the integrity of those plans and the expectations of their participants and beneficiaries." Duggan v. Hobbs, 99 F.3d 307, 309-10 (9th Cir. 1996). ERISA regulates "any employee benefit plan if it is established or maintained . . . by any employer . . . or . . . by any employee organization . . . or by both." 29 U.S.C. § 1003(a); see Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1007 (9th Cir. 1998). There are two types of "employee benefit" plans under ERISA, an "employee welfare benefit plan," which provides medical benefits and any benefits "other than pensions on retirement or death," and an "employee

5

pension benefit plan," which "provides retirement income" or "results in a deferral of income [until retirement]." 29 U.S.C. § 1002(1), (2); Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 999 (9th Cir. 2010). "The existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person." Zavora v. Paul Revere Life Ins. Co., 145 F.3d 1118, 1120 (9th Cir. 1998). If there is an ERISA plan, then ERISA will preempt state law causes of action through one of two strands: "(1) 'express' preemption under [29 U.S.C. § 1144(a)]; and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in 29 U.S.C. § 1132(a)." Fossen v. Blue Cross & Blue Shield of Mont., 660 F.3d 1102, 1107 (9th Cir. 2011). ERISA's exclusive remedial scheme includes three possible claims: (1) an action to recover benefits due under the ERISA plan; (2) an action for breach of fiduciary duties; and (3) a suit to enjoin violations of ERISA or the employee benefit plan or to obtain other equitable relief. Paulsen v. CNF, Inc., 559 F.3d 1061, 1084 (9th Cir. 2009). When ERISA preemption applies, it defeats the preempted state law cause of action on the merits. Fossen, 660 F.3d at 1107.

*Discussion*

1.   First Cause of Action – Breach of Contract

The first cause of action has two subparts. Subpart A is based on breach of the MBP. Subpart B is based on breach of the ESOP. The Court will address the ESOP and the MBP separately.

    a.   The MBP

As the Court understands the arguments being made, the critical issue is whether the MBP is an ERISA "top hat plan." "Top hat plans" are subject to ERISA's enforcement provisions. Garratt v. Knowles, 245 F.3d 941, 946 n.4 (7th Cir. 2001). However, "top hat plans" are a rare subspecies of ERISA plans that are covered by a special regime, including exemptions from fiduciary, funding, participation, and vesting requirements applicable to other employee benefit plans." Gilliam v. Nevada Power Co., 488 F.3d 1189, 1193 (9th Cir. 2007); Duggan v. Hobbs, 99 F.3d 307, 310 (9th Cir. 1996). ERISA defines a "top hat plan" as "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a

1   select group of management or highly compensated employees." 29 U.S.C. 1101(a)(1); Gilliam,
2   488 F.3d at 1193; Duggan, 99 F.3d at 310.  Compensation is considered to be "deferred" when it
3   is received by the employee significantly after the services are rendered.  See Duggan, 99 F.3d at
4   311-12.  A plan applies to a "select group" when the plan's coverage is limited to a small
5   percentage of the employer's entire work force, and the select group has the ability to affect or
6   substantially influence (through negotiation or otherwise) the design and operation of the deferred
7   compensation plan.  See id. at 312-13.  "Unfunded plans do not confer a present taxable economic
8   benefit."  Minor v. United States, 772 F.2d 1472, 1475 (9th Cir. 1985).  "If an employer places
9   plan participants' deferred compensation into a separate trust, the plan remains 'unfunded' only if
10  the employee's interest is unsecured or not otherwise protected from the employer's creditors."  In
11  re ComUnity Lending, Inc., 399 Fed. Appx. 242, 243 (9th Cir. 2010); Minor, 772 F.2d at 1475.
12  Although there is a circuit split, the Ninth Circuit reviews "top hat plans" through the framework
13  established by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)*
14  and *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  See Sznewajs v. United States
15  Bancorp Amended & Restated Supp'l Benefits Plan, 572 F.3d 727, 734 (9th Cir. 2009); but see
16  Craig v. Pillsbury Non-Qualified Pension Plan, 458 F.3d 748, 752 (8th Cir. 2006).

17       Griffith has submitted a copy of the 13-page MBP.  See Doc. No. 15-1.  The MBP states
18  that it is "a combination annual bonus plan and a nonqualified, deferred compensation
19  arrangement for key employees . . . ," and that the nonqualified, deferred compensation plan "is
20  intended to be a Top Hat Plan as defined by [ERISA]."  Id. at § I(O).  "Participants" in the MBP
21  are defined as "key employees" that are approved by the CEO.  Id. at § I(M).  Employees eligible
22  to become "participants" are "key employees" whose continued employment is deemed critical to
23  Griffith's success, and a "select group of management or highly compensated employees meeting
24  Top Hat Plan eligibility requirements [under ERISA]."  Id. at § 3(A).  The MBP provides that
25  50% of a participant's calculated bonus will be paid to the participant as an annual bonus, while
26  the remaining 50% is to be retained as an Annual Deferred Contribution.  See id. at § V(D).
27  "Annual Deferred Contributions" are "non-elective, performance based deferred compensation . . .
28  [that are] determined based upon the performance of [Griffith] and the Participants over the

preceding twelve month performance period." Id. at § I(A).  "Annual Deferred Contributions" are to "remain 'at risk' to creditors at all times while they are held as assets of [Griffith]." Id.  Annual Deferred Contributions vest according to an express schedule, the end result being that a particular Annual Deferred Contribution will fully vest in six years.  See id. at § VI(A).  Payments of the Annual Deferred Contributions are made following the second year of participation and within 90 days following December 31.  See id. at § VII(B).  Additionally, unvested amounts of Annual Deferred Contributions shall become fully vested, irrespective of the typical vesting schedule, if *inter alia* the participant separates from Griffith's employment due to retirement, the participant's death, or the Board of Director's deeming a participant totally mentally or physically disabled.  See id. at § VI(B).  A participant who separates from employment prior to reaching age 65 and for a reason other than death, total disability, or retirement forfeits all rights to the accrued unvested Annual Deferred Contributions.  See id. at § VII(C)(1).

At first blush, the language and the provisions of the MBP suggest that its deferred compensation arrangement is a "top hat plan."  By its express language, the MBP references ERISA and states that it is intended to fit the classification of an ERISA "top hat plan."  See id. at § I(O).  The MBA indicates that all Annual Deferred Contributions are at risk to creditors while those contributions are held by Griffith, see id. at § I(A), which suggests that the MBP is "unfunded."  In re ComUnity, 399 Fed. Appx. at 243; Minor, 772 F.2d at 1475.  A participant must wait a year before he can receive any portion of an Annual Deferred Contribution after it has been awarded, which suggests that the Annual Deferred Contributions are deferred compensation.  See Duggan, 99 F.3d at 311-12.  Nevertheless, based on the record presented, the Court cannot hold that the MBP is a "top hat plan."

As indicated, ERISA limits "top hat plan" participation to a "select group."  See 29 U.S.C. § 1101(a).  The MBP states that its participants are limited to a select group of management, highly compensated employees, and "key employees" who are deemed critical to Griffith's success.  See Doc. No. 15-1 at § III(A).  However, it is not enough for the MBP to attempt to track the language of an ERISA "top hat plan," rather, there must be some indication that the plan is actually administered consistent with the requirements of a "top hat plan."  See Callan v. Merrill

Lynch & Co., 2010 U.S. Dist. LEXIS 89997, 32-33 (S.D. Cal. Aug. 27, 2010); Guiragoss v. Khoury, 444 F.Supp.2d 649, 658 (E.D. Va. 2006); see also MacDonald v. Summit Orthopedics, Ltd., 681 F.Supp.2d 1019, 1024 (D. Minn. 2010). Fatal to this motion, there is nothing before the Court that adequately describes the individuals who actually participate in the MBP. To be limited to a "select group" of employees within the meaning of 29 U.S.C. § 1101(a), the MBP must be limited to a small percentage of Griffith's workforce and the participants must be able to affect or substantially influence the design or operation of the MBP.[1] See Duggan, 99 F.3d at 312-13. However, there are no allegations or evidence that identifies the percentage of Griffith employees who participate in the MBP, nor are there allegations or evidence that describes the nature of the MBP participants' employment or "bargaining power" with Griffith. Additionally, ERISA's definition of "top hat plan" relates to a "select group *of management or highly compensated employees*." 29 U.S.C. § 1101(a)(1) (emphasis added). The definition does not discuss "key employees who are deemed critical to an employer's success." If the "key employee" participants are not in management or are not highly compensated, there is a question whether the MBP could still be considered a "top hat plan." Cf. Guiragoss, 444 F.Supp.2d at 661 (indicating no legitimate "top hat plan" if participants are not members of management or not highly compensated) with Callan, 2010 U.S. Dist. LEXIS 89997 at *30 (noting that a plan may be a "top hat plan" even if some non-management or non-highly compensated employees participate). Griffith does not discuss the impact of "key employee" participants. In sum, the Court cannot determine if the MBP applies to a "select group" because the nature of the employment and bargaining ability the MBP participants is unknown, it is unknown what percentage of Griffith's employees are MBP participants, and the impact of participants who are "key employees" has not been addressed.

Because Griffith has not addressed the relevant criteria, Griffith has not shown that the MBP is a "top hat plan." Therefore, dismissal of this claim is not appropriate at this time.

---

[1] To the Court's knowledge, the Ninth Circuit has not set any limits on a number that sets the ceiling for "select individuals." Case law from other circuits suggest that a participation rate of 15% or less may fit within the definition of "select individuals. Cf. Demerey v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 288 (2d Cir. 2000) (participation rate of 15.34% found to apply to "select individuals"); with Darden v. Nationwide Mutual Ins. Co., 717 F.Supp. 388, 397 (E.D. N.C. 1989) (participation rate of 18.7% found not too large to apply to "select individuals").

b.  The ESOP

The Complaint alleges that the ESOP in this case is a structured retirement plan. See Complaint ¶ 59. "An ESOP is a type of ERISA plan 'designed to invest primarily in' the stock of the employer who created it," and "Congress expressly intended that the ESOP would be both an employee retirement plan and a technique of corporate finance that would encourage employee ownership." Johnson v. Couturier, 572 F.3d 1067, 1076 (9th Cir. 2009) (citing *inter alia* 29 U.S.C. § 1107(d)). Grigg does not address Griffith's argument that the ESOP is an ERISA plan or that his breach of the ESOP claim is preempted by ERISA. Cf. Cortez v. New Century Mortg. Corp., 2012 U.S. Dist. LEXIS 13469, *12 n.3 (N.D. Cal. Feb. 3, 2012) (holding the failure to respond to an argument about the nature of a claim was a concession of the defendant's characterization of that claim); In re Fresh & Process Potatoes Antitrust Litig., 834 F.Supp.2d 1141, 1169 (D. Idaho 2011) (same). The Court concludes that the ESOP in this case is an ERISA retirement plan. See Johnson, 572 F.3d at 1076; In re Fresh, 834 F.Supp.2d at 1169; Complaint ¶ 59. Because the ESOP is an ERISA plan, Grigg's state law breach of contract claim is preempted by ERISA. See DeVoll v. Burdick Painting, Inc., 35 F.3d 408, 412 (9th Cir. 1994); Nevill v. Shell Oil Co., 835 F.2d 209, 212 (9th Cir. 1987). Dismissal of this claim is appropriate.

    2.  Second Cause of Action – Cal. Labor Code § 203

Labor Code § 203 imposes liability on "an employer" who fails to timely pay the wages of a discharged employee. See Cal. Lab. Code § 203(a). The Ninth Circuit has found that Labor Code § 203 claims that relate to an ERISA plan are preempted. See Orozco v. United Air Lines, Inc., 887 F.2d 949, 952 (9th Cir. 1989); Colaco v. Asic Advantage Simplified Emple. Pension Plan, 2013 U.S. Dist. LEXIS 139907, 21-23 (N.D. Cal. Sept. 26, 2013).

Here, Grigg relies on the MBP as the basis for the alleged § 203 violation. Griffith argues that the cause of action is preempted because the MBP is an ERISA "top hat plan." However, the Court has found that Griffith has not established that the MBP is an ERISA "top hat plan." Because it has not been established that the MBP is a "top hat plan," dismissal of the § 203 cause of action is not appropriate at this time.

     3.     <u>Fifth Cause of Action – Breach of the Implied Covenant of Good Faith</u>

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." <u>Kransco v. American Empire Surplus Lines Ins. Co.</u>, 23 Cal.4th 390, 400 (2000). "The covenant does not exist independently of the underlying contract." <u>Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.</u>, 186 Cal.App.4th 696, 712 (2010). "Breach of the covenant of good faith and fair dealing is nothing more than a cause of action for breach of contract." <u>Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga</u>, 175 Cal.App.4th 1306, 1344 (2009). The Ninth Circuit has held that claims for violation of the covenant of good faith are preempted when they relate to enforcement of an ERISA plan. See <u>Orozco</u>, 887 F.2d at 952; <u>Nevill v. Shell Oil Co.</u>, 835 F.2d 209, 212 (9th Cir. 1987).

Here, although not entirely clear, the Court interprets the fifth cause of action as based on breaches of the ESOP and the MBP. As discussed above, the ESOP is an ERISA plan. To the extent that the fifth cause of action is based on a violation of the ESOP, such a claim is preempted by ERISA and will be dismissed. See <u>Orozco</u>, 887 F.2d at 952; <u>Nevill</u>, 835 F.2d at 212. Also as discussed above, Griffith has not established that the MBP is an ERISA "top hat plan." Because Griffith has failed to establish that the MBP is a "top hat plan," dismissal of this claim is inappropriate at this time.

**CONCLUSION**

Griffith moves to dismiss the first, second, and fifth causes of action due to ERISA preemption. As to the ESOP, there is no dispute that the ESOP is an ERISA plan and that preemption applies. Therefore, the first and fifth causes of action will be dismissed to the extent they are based on the ESOP. As to the MBP, Griffith argues that preemption applies because the MBP is a "top hat plan." However, Griffith has failed to establish that the MBP actually meets the ERISA "top hat plan" requirements. Because Griffith has not shown that the MBP is a "top hat plan," the first, second, and fifth causes of action will not be dismissed at this time to the extent that they are based on the MBP.

11

Because the Court has found that the claims based on the ESOP are preempted, the Court will dismiss those claims with leave to amend. Grigg may file an amended complaint that utilizes the remedial scheme of ERISA for the alleged breaches of the ESOP. Additionally, although the Court has not dismissed the MBP-based claims, the issue of ERISA preemption of the MBP has not been resolved. If Grigg files an amended complaint, he may allege violations of the ERISA remedial scheme relating to the MBP as an alternative theory of recovery.[2]

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to dismiss the first and fifth causes of action with respect to the ESOP is GRANTED;
2. Plaintiff's motion to dismiss the first, second, and fifth causes of action with respect to the MBP is DENIED;
3. Plaintiff may file an amended complaint, consistent with this order, within twenty-one days (21) of service of this order; and
4. If Plaintiff files an amended complaint, Defendants shall file an answer or a responsive motion within twenty-one (21) days of service of the amended complaint.

IT IS SO ORDERED.

Dated:   January 9, 2014                       _____
                                                SENIOR DISTRICT JUDGE

---

[2] Plaintiffs may allege alternative and inconsistent theories of recovery. See Fed. R. Civ. Pro. 8(d)(2), (3); MB Fin. Grp., Inc. v. United States Postal Serv., 545 F.3d 814, 819 (9th Cir. 2008); Independent Enters. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1175 (3d Cir. 1997); Lucas v. City of Visalia, 726 F.Supp.2d 1149, 1159 (E.D. Cal. 2010). Of course, the remedial scheme of ERISA is exclusive. If it is later determined that the MBP is an ERISA plan, then the corresponding state laws will be preempted and the recovery will be limited to ERISA remedies.